UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

UNITED STATES OF AMERICA,

            Plaintiff,

    -against-                              Cr. 13-072 (SJF)

MARCOS ALSONSO ZEA,
    also known as "Ali Zea,"

            Defendant.

----------------------------------------------------------------X

## REPLY SENTENCING MEMORANDUM ON BEHALF OF MARCOS ZEA

This memorandum is respectfully submitted to reply to certain points raised by the government in its April 14, 2015 sentencing letter to the Court.

### DEFENDANT'S OBJECTION TO THE PSI

By letter dated April 8, 2015 defendant raised several factual objections to the PSI. At p. 6, fn 4 of its sentencing letter, the government takes the position that no *Fatico* hearing is necessary as to defendant's objections, as, according to the government, the issues in dispute should not be material to defendant's sentence.

1

Defendant agrees with the government's assessment, and requests that the Court disregard the items that are in dispute.

## APPLICATION OF THE TERRORISM ENHANCEMENT

At pp. 16-20 of Zea's sentencing Memorandum, defendant argued against the application of the § 3A1.4 terrorism enhancement to Zea's offense conduct. Zea cited to the cases holding that a person may be guilty of material support of terrorism, without necessarily qualifying for the terrorism enhancement. Zea also cited to the cases holding that, in order to qualify for the terrorism enhancement, a defendant must act with the "specific intent to affect government conduct by coercion or intimidation." *U.S. v. Banol-Ramos*, 516 Fed. Appx. 43, 49, 2013 U.S. App. LEXIS 5961 (2nd Cir. 2013).

In its sentencing letter, pp. 7-8, the government does not dispute these basic principles. The government argues, however, that, the evidence in this case satisfies this standard.

To support invocation of the terrorism enhancement, the government cites to evidence of Kaliebe's conduct and statements. Thus, the government cites to a June 4, 2012 recorded conversation between Kaliebe and the undercover agent. During this conversation, Kaliebe tells the undercover agent that he, Kaliebe, wanted to fight the Yemeni Army, U.S.

2

drones, U.S. puppets, American agents, or U.S. Special Forces. Significantly, Zea was not present for this conversation.

The government's citation of Kaliebe's statements to the undercover as to Kaliebe's intent does not satisfy the government's burden to justify application of the terrorism enhancement to *Zea*. Under *Banol-Ramos*, *U.S. v. Stewart*, *U.S. v. Leahy*, and *U.S. v. Awan*—all of which are cited at p. 19 of defendant's sentencing memorandum—in order to invoke the terrorism enhancement, the evidence must show that defendant himself acted with the specific intent to affect government conduct through coercion or intimidation, or to retaliate against government conduct. *See, e.g., U.S. v. Stewart*, 590 F.3d 93, 136-39 (2d Cir. 2009) (enhancement denied, where "there is no evidence that [defendant] himself sought to influence or affect the conduct of a government.") *Accord, U.S. Leahy*, 169 F.3d 433, 446-48 (7th Cir. 1999).

In this case, the government has identified no evidence that Zea himself had the specific intent to affect government conduct. Kaliebe's statements as to Kaliebe's intent do not suffice to satisfy the government's burden to show that *Zea* harbored the required specific intent.

The government's citation to the hypothetical example of a terrorism offense provided by the Court in *U.S. v. Awan*, 607 F.3d 306, 317 (2d Cir. 2010), is not on point. According to the *Awan* hypothetical cited by the government, a person who murders a head of state has committed an act of terrorism, even if the actor's intent or motive was not to influence the conduct of government, as the inevitable consequence of such an act is to affect the conduct of government. The government has cited to no such comparable evidence in this case. In order for the *Awan* hypothetical to apply to this case, the government would have point to some actual act directed at government either committed, attempted, or plotted, by defendant. The government has cited to no such evidence, for the simple reason, as stated in defendant's Sentencing Memorandum, defendant never committed, attempted, or plotted, any actual violent or terrorist acts. As such, the *Awan* hypothetical is not applicable to defendant.

Finally, the government argues that the terrorism enhancement should apply, simply on the basis of the nature of AQAP itself, and its history of "targeting secular government infrastructure." Government letter, p. 7. Again, this argument misses the test established by the case law, which focuses on *the defendant's* specific intent to affect, or retaliate against, government conduct. Just as the government can not satisfy its burden as to

4

Zea by pointing to Kaliebe's intent, the government can not satisfy its burden as to Zea by pointing to the intent of other individuals belonging to AQAP. In order to apply the terrorism enhancement to Zea, on the basis of the history of AQAP, the government must point to evidence that Zea shared the intent of AQAP to affect, or retaliate, against government conduct through intimidation. The government has not identified any such evidence.

## THE GOVERNMENT RECOMMENDED SENTENCE OF 25 YEARS WOULD BE DISPROPORTIONATE TO SENTENCES RECEIVED BY OTHERS SIMILARLY SITUATED

In its sentencing letter, the government recommends a 25 year sentence.

Defendant's Sentencing Memorandum presented a detailed review of sentences in federal terrorism cases over the last nine years. The information in this compilation was taken directly from the website of the DOJ National Security Division, which maintains an archive of press releases issued by DOJ for all federal terrorism cases for the last nine years.

While the government contends that defendant has presented "minimal information" about these cases, government letter, p. 11, the government does not contest the accuracy of any of the information presented by defendant. The contention, moreover, that defendant has presented only "minimal information" about these cases is not correct. As to

5

each case, defendant has presented what is usually the most significant factor in a sentencing decision—i.e., the offense conduct. This information is taken directly from the DOJ website, and the DOJ press releases have been submitted to the Court.

The government also suggests that the cases presented by defendant do not account for the fact that some of the defendants may have cooperated with the government. In presenting the comparable cases, however, defendant has attempted to exclude the cases of cooperation. Had cooperation been included, the sentences would have been even lower. For example, on January 23, 2015 Shannon Conley was sentenced in the District of Colorado to four years, for conspiring to commit material support of terrorism. Conley's offense consisted of attempting to fly to Turkey to join ISIS. Conley entered into a cooperation agreement with the government, so defendant did not include her in the review of comparable cases. (Attached hereto is a copy of the DOJ January 23, 2015 press release for Conley, and attached cooperation agreement.)

While the government contends that the cases presented by defendant should not form a benchmark as to what an appropriate sentence should be in a case of this nature, the government has presented no cogent reason why the sentence in these federal terrorism prosecutions should be simply

disregarded. The cases at issue were all selected by the DOJ, and posted on its website. It is the DOJ that has created this archive. The archive is an extremely useful reference, and it provides a direct window—selected by the government—as to sentences imposed in cases of this nature.

While the government minimizes the significance of the sentences presented by defendant, it fails to identify a single sentence of 25 years—the sentence recommended by the government in this case—that was imposed for offense conduct comparable to this case.

The single sentence identified by the government as a benchmark for this case—the 27 year sentence imposed on Betim Kaziu, Govt letter, p. 11—is not at all comparable. The Kaziu sentence was discussed at p. 53 of defendant's sentencing memorandum. The 27 year sentence in Kaziu was imposed after a conviction at trial. Zea, unlike Kaziu, has chosen not to go to trial and, instead, has entered a plea at the very early stages of the proceedings. The offenses of conviction, and the offense conduct at issue in Kaziu, moreover, were much more serious than in this case. Kaziu was convicted at trial of conspiracy to kill American soldiers overseas and other offenses, including conspiracy to use a machine gun to commit killings of American soldiers. Kaziu traveled to Egypt and Kosovo in furtherance of his plans, attempted to purchase automatic weapons in Cairo, and recorded a

7

martyrdom video in Kosovo, on his way to target US troops. DOJ March 2, 2012 press release, included in Exhibit B to Sentencing Memorandum.

Based on the sentences imposed nationwide for federal defendants convicted of comparable offenses, defendant submits that the recommended sentence of 25 years would run afoul of 18 USC § 3553(a)(6), which directs sentencing courts to consider, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Guidelines were "intended to eliminate national disparity" in sentencing. *Stewart*, supra, 590 F.3d at 140 (citation omitted). In this case, a sentence of 25 years would be vastly disproportionate to sentences imposed on other similarly situated federal defendants.

In its letter, the government argues that defendant puts too much weight on the fact that no actual injury was caused by defendant. Instead, the government asks the Court to focus exclusively on the potential harm it contends was envisioned by defendant's offense conduct. The Second Circuit, however, has held that it is appropriate for a sentencing court to factor in the lack of actual harm in imposing a terrorism sentence. Thus, in *Stewart, supra*, the Court held that it was appropriate "for the district judge to decide that the fact that no injury occurred in the case mitigated the

8

gravity of [defendant's] offense. The criminal law often punishes the substantive commission of a crime more severely than an attempt to commit the same crime, even when that which separates an attempt from the substantive commission of an offense is not culpability but fortuity. Fortuitous events are not categorically irrelevant to the determination of a just punishment . . ." 590 F.3d at 139-40 (footnote omitted).

The government, in arguing for a 25 year sentence, places great emphasis on what it perceives to be the potential harm that could have been realized had Zea actually reached Yemen. The government argues in affect, that the potential harm should outweigh the fact that no injury actually resulted from the offense conduct. In addition, the government also places no weight on the fact that Zea never actually attempted or plotted any acts of violence. In sentencing federal terrorism defendants, however, the Eleventh Circuit has cautioned against placing too much weight on potential harm, as opposed to actual harm caused (or, in this case, not caused). In *U.S. v. Mandhai*, 375 F.3d 1243, 1245 (11th Cir. 2004), the Court held: "While what might have happened under different circumstances is certainly relevant in the sentencing context, it is rarely the driving force."

In its sentencing letter, the government contends that defendant is asking the Court to sentence him solely on the basis of his history and characteristics, to the exclusion of all the other 3553 factors. Govt letter, pp. 9-10. This is simply not correct.

While defendant is of course asking the Court to consider Zea's personal history and background, and has submitted to the Court numerous letters from family, friends, neighbors and co-workers, attesting to Zea's many good qualities as son, brother, friend and neighbor. Defendant, however, is not asking the Court to disregard the other 3553 factors. In particular, defendant is asking the Court to consider carefully the nature and circumstances of the offense. Defendant is asking the Court not to impose the government's recommended 25 year sentence, solely on the basis that this is a terrorism case and, therefore, according to the government, must call for the maximum possible sentence. Defendant is asking the Court to instead consider the precise circumstances of Zea's offense conduct, which is addressed in defendant's Sentencing Memorandum. Defendant has argued that one of the 3553 factors the Court should consider is the fact that Zea's conduct did not involve any actual injury, and nor was Zea involved in any actual terrorism acts or plots. Zea has specifically asked the Court to

10

sentence defendant on the basis of 3553(a)(6), which directs the Court to avoid unwarranted sentencing disparities.

Finally, Zea is not asking the court to disregard 3553(a)(2), which directs the Court to "impose a sentence sufficient, but not greater than necessary, to comply with . . . the need for the sentence imposed" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, promote deterrence, and protect the public. Zea is requesting that the Court, in formulating a sentence "sufficient, but not greater than necessary," to meet the purpose of 3553(a)(2), take into account the conclusions reached by other district judges in applying the 3553(a)(2) factors to terrorism cases. As set forth in detail in Zea's Sentencing Memorandum, in examining all other comparable cases, application of 3553(a)(2) sentencing objectives has resulted in sentences well under the 25 years recommended by the government.

Dated: April 16, 2015
New York, NY

MARC BOGATIN
277 Broadway, Suite 900
New York, NY 10007
212 406-9065
marcbogatin@yahoo.com
Attorney for Defendant

# EXHIBIT A

JUSTICE NEWS

Department of Justice

Office of Public Affairs

FOR IMMEDIATE RELEASE　　　　　　　　　　　　　　　　　　　　　Friday, January 23, 2015

### Colorado Woman Sentenced for Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization

Assistant Attorney General for National Security John P. Carlin, U.S. Attorney John Walsh of the District of Colorado and Special Agent in Charge Thomas Ravenelle of the FBI's Denver Division announced that Shannon Conley, 19, of Arvada, Colorado, was sentenced today by U.S. District Court Judge Raymond P. Moore to serve 48 months in federal prison, followed by 3 years on supervised release with 100 hours of community service, for conspiracy to provide material support to a designated foreign terrorist organization. Conley, who appeared at the hearing in custody, was remanded at its conclusion.

Conley was first charged by criminal complaint on April 9, 2014. She was indicted by a federal grand jury in Denver on Sept. 10, 2014.

According to court documents, including the stipulated facts in the plea agreement, from about February 2014 and continuing through April 8, 2014, Conley and a co-conspirator unlawfully worked together and with other individuals to provide and attempt to provide material support and resources to a designated foreign terrorist organization, specifically Al-Qaeda (AQ) and Al-Qaeda in Iraq (AQI), aka the Islamic State of Iraq (ISI), aka the Islamic State of Iraq and Al Sham (ISIS), aka the Islamic State of Iraq and the Levant (ISIL).

The conspiracy was accomplished, in part, when Conley met the co-conspirator on the Internet. During their communications, they shared their view of Islam as requiring participation in violent jihad. The co-conspirator communicated to Conley that he was an active member of a group fighting in Syria known as ISIS. The two then decided to become engaged and worked together to have Conley travel to Syria to join her new fiancé. Before traveling to Syria, Conley refined and obtained additional training and skills in order to provide support and assistance to any AQ and/or ISIS fighter. Conley also intended to fight if it became necessary to do so.

In furtherance of the conspiracy, Conley joined the U.S. Army Explorers (USAE) to be trained in U.S. military tactics and in firearms. She traveled to Texas and attended the USAE training. She also obtained first aid/nursing certification and National Rifle Association certification. Conley knew that ISIS was a designated foreign terrorist organization. In fact, on numerous occasions, Special Agents with the FBI met with her in attempts to persuade her not to carry out her plans to travel overseas to provide support to a foreign terrorist organization and to engage in violent jihad. On March 29, 2014, the co-conspirator, together with others, arranged for an airline ticket to be purchased for Conley to travel to Turkey, departing from Denver on April 8, 2014. On April 8, 2014, Conley traveled to Denver International Airport and attempted to board the flight to Turkey. She was then arrested by FBI agents.

A subsequent search of Conley's home revealed DVDs of Anwar Al-Awlaki lectures and a number of books and articles about AQ, other terrorist groups and jihad. Agents also recovered shooting targets labeled with the number of rounds fired and distances.

"Conspiring to providing material support to a foreign terrorist organization is a serious federal crime," said U.S. Attorney John Walsh. "The defendant in this case got lucky. The FBI arrested her after determining that she had been radicalized and planned to travel to Syria to support the brutal foreign terrorist organizations operating there. Had she succeeded in her plan to get to Syria, she would likely have been brutalized, killed or sent back to the United States to commit other crimes. Today's sentence underscores the seriousness of defendant's conduct, but pales in comparison to the penalty she would have paid had she not been stopped."

"This sentencing highlights the rapidly changing, shrinking nature of the world and the implications for law enforcement and public safety," said Special Agent in Charge Thomas Ravenelle. "Terrorist groups now have the ability to directly attract and even recruit U.S. residents to commit violence or provide other support on their behalf. Anyone in our community who takes deliberate steps to commit federal crimes in support of a declared terrorist organization will have those steps disrupted and will be arrested and prosecuted whenever appropriate and necessary in order to preserve the safety of our community."

This case was investigated by the FBI and the Arvada Police Department.

The defendant was prosecuted by Assistant U.S. Attorney Greg Holloway of the District of Colorado, with the assistance of Jennifer Levy of the National Security Division's Counterterrorism Section.

15-093

National Security Division (NSD)

*Updated January 23, 2015*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.: 14-cr-00163-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. SHANNON CONLEY,

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the government), by and through Gregory Holloway, Assistant United States Attorney for the District of Colorado, and the defendant, SHANNON CONLEY personally and by counsel, Robert Pepin, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing, pursuant to D.C.Colo.LCrR 11.1.

### I. PLEA AGREEMENT

The defendant agrees to plead guilty to a one-count Information which charges her with Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization, a violation of 18 U.S.C. § 371, referencing 18 U.S.C. § 2339B.

The government agrees that a three-point reduction in the offense level for

Court's Exhibit

1

acceptance of responsibility is appropriate pursuant to United States Sentencing Commission, Guidelines Manual, § 3E1.1(a)(Nov. 2013).

The government further agrees not to charge the defendant in United States District Court for the District of Colorado with any additional criminal activity currently known to the government provided the defendant fulfills the terms of the plea agreement and cooperates completely and truthfully as described below.

As part of this disposition, the defendant agrees to cooperate and debrief completely and truthfully with Federal Bureau of Investigation ("FBI") agents and other law enforcement officials concerning her knowledge of other individuals involved in providing or attempting to provide material support in any form to any terrorist organization; and any other criminal activity in the District of Colorado and/or elsewhere. The United States agrees to fully and fairly consider the information provided pursuant to § 5K of the Sentencing Guidelines and Policy Statements. The United States, in its sole discretion, will determine whether the defendant has provided substantial assistance. The defendant also agrees to testify truthfully before a grand jury or petit jury in this case and any future prosecution arising out of her cooperation.

If the defendant provides substantial assistance in the debriefing described above, by fully and truthfully disclosing all information known to her concerning the matters referenced above, the government will file a motion for downward departure pursuant to § 5K1.1 of the Sentencing Guidelines. The United States, in its sole discretion, will

2

determine the amount of any downward departure request pursuant to § 5K1.1.

## II. ELEMENTS OF THE OFFENSE

In order to establish a violation of 18 U.S.C. § 371, the government would need to prove that:

1) The defendant agreed with at least one other person to violate the law;

2) one of the conspirators engaged in at least one overt act furthering the conspiracy's objective;

3) the defendant knew the essential objective of the conspiracy;

4) the defendant knowingly and voluntarily participated; and,

5) there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Tenth Circuit Pattern Criminal Jury Instruction 2.19 (2011).

For a violation of 18 U.S.C. § 2339B, Providing and Attempting to Provide Material Support to a Designated Foreign Terrorist Organization, the government must prove:

1. The defendant did knowingly provide and attempt to provide material support and resources to a foreign terrorist organization;

2. That the defendant knew that the foreign terrorist organization was a designated terrorist organization, that had engaged in and was engaging in terrorist activity and terrorism; and,

3

conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 09/09/2014

_____
Shannon Conley
Defendant

Date: 09/09/2014

_____
Robert Pepin
Attorney for Defendant

Date: 09-10-2014

_____
Gregory A. Holloway, WSBA #28743
Assistant U.S. Attorney

12