# REYNOLDS, CARONIA, GIANELLI & LA PINTA, P.C.
### ATTORNEYS AT LAW
### 200 VANDERBILT MOTOR PARKWAY, SUITE C-17
### HAUPPAUGE, NEW YORK 11788

JAMES T. REYNOLDS
PETER R. CARONIA, LLC.
PAUL GIANELLI
ANTHONY M. LA PINTA

TEL: 631.231.1199
FAX: 631.300.4380
www.rcgllaw.com

OF COUNSEL:

JOHN T. CATTERSON
CATHERINE E. MILLER
CHRISTOPHER J. PURCELL

MICHAEL E. FEHRINGER
BRETT J. BENNETT

**FILED ECF**

June 25, 2015

The Honorable Denis R. Hurley
United States District Court, EDNY
Alphonse M. D'Amato Federal Building
100 Federal Plaza
Central Islip, New York 11722

    **Re: USA v. Justin Kaliebe**
        13 CR 72 (DRH)

Your Honor:

    I represent Justin Kaliebe in the above matter that was recently assigned to you as a result of an order of recusal by Judge Feuerstein.

    Kindly accept this letter motion requesting an order allowing defense counsel to attend the government's in custody psychological evaluation of Justin by their expert psychiatrist, Dr. Berrill.

    The government hired Dr. Berrill to evaluate defendant's mitigation claim that he acted under a 'diminished capacity' when he engaged in criminal behavior after he was befriended by undercover government agents who secretly recorded Justin after meeting him at a local mosque when Justin was sixteen years of age.

Procedural History

    Justin pleaded guilty on February 8, 2013 before Magistrate Judge Kathleen A. Tomlinson to an Information charging him with

Attempt to Provide Material Support to Terrorists, 18 U.S.C. Sec. 2339A(a) and Attempt to Provide Material Support to a Foreign Terrorist Organization, 18 U.S.C. Sec. 2339B(a)(1)(2).

The defense previously requested a Fatico hearing to advance the issue of mitigation that Justin acted under 'diminished capacity' when he committed these crimes. The defense expects to call Justin's treating pediatrician and an expert psychiatrist as witnesses at the Fatico hearing to explain the finding of 'diminished capacity' and Justin's diagnosis of Aspergers Syndrome. The government has refused to allow a defense representative to be present during their psychological evaluation of Justin.

Relevant Facts

Justin suffers from significant psychiatric and medical conditions, including Autism-Asperger's Syndrome, Kallman's Syndrome, major depressive disorder, a significant speech impediment and debilitating osteoporosis. Justin has been learning disabled and developmentally delayed since the age of two. After years of rejection and exclusion from peer groups, and a dysfunctional and chaotic family structure, Justin converted to Islam and joined a mosque when he was 16. He joined the mosque to meet friends and, for the first time in his life, felt that he was being accepted. Given his psychological, emotional and physical deficits, and his desire to become a valued member of his new-found Muslim "family," Justin became obsessed with his new religion and was misguided by radical Muslin leaders he read about on the Internet.[1]

Soon after joining the mosque, Justin was befriended by two young Muslims who, unbeknownst to him, were undercover law enforcement agents. After being "courted" by these agents, Justin offered money and support, in person and online, to Al-Qaeda in the Arabian Peninsula, also known as Ansar al-Sharia (hereinafter, AQAP/AAS). One agent with whom Justin communicated told him that he was of Yemeni descent and that he had contacts in Yemen. The other, with whom Justin communicated "online," purported to be located in Yemen. Justin told the agents that he wanted to join jihad and that he would have $600 to give to the "brothers."

On January 21, 2013, for the purpose of joining AQAP/AAS, Justin attempted to board a flight from JFK Airport to Oman. He presented his passport, received a boarding pass, but as he

---

[1] Due to his Autism-Asperger's condition, Justin often became obsessed with topics such as Harry Potter, professional wrestling and the United States Marines.

attempted to board the aircraft, he was arrested.

### The Law

The Second Circuit has twice addressed the issue of the presence of defense counsel during a government psychiatric evaluation of a criminal defendant. Second Circuit precedent indicates that there is no general right for a defendant to have defense counsel present during psychiatric evaluations. The Second Circuit held in United States v. Baird, 414 F.2d 700, 708 (2d Cir. 1969) that a criminal defendant pleading insanity as an affirmative defense during trial and offering expert opinion in support of that position may be subjected to government-ordered psychiatric evaluation of the issue of criminal responsibility or willfulness without infringing the Fifth Amendment right against self-incrimination. Citing Schmerber v. California, 384 U.S. 757, 86 S. Ct 1826 (1966), the Second Circuit held that expert witnesses could recount otherwise inadmissible hearsay evidence as "real or physical evidence" forming the basis for an evaluation of the defendant's mental state, but that evidence is not admissible to prove the truth of the underlying statements. Id. at 708-709. The court also held that the evaluation itself did not constitute a "critical stage" in the proceedings, thus a criminal defendant pleading insanity does not have an unequivocal right to the presence of defense counsel at these evaluations. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926 (1967); Id at 711. In U.S. v. Trapnell, 195 F.2d 22, 24 (2d Cir. 1974), the Second Circuit, citing Baird, determined that a criminal defendant pleading insanity does not suffer a violation of his Fifth Amendment right against self-incrimination when his attorney is not permitted to attend a psychiatric examination performed by a government psychiatrist employed to testify at trial regarding the defendant's rationality during the commission of the crime(s) he stands charged with.

In United States v. Wilson, 920 F. Supp. 2d, 287, 305 (EDNY, 2012) Judge Garaufis of our district held that a criminal defendant convicted of capital-eligible crimes did not have his Fifth or Sixth Amendment rights violated when his attorneys were not permitted to be present during a government expert's examination of the defendant, nor when the defendant's counsel was not permitted to videotape the examination and monitor it via audio feed.

While each of these cases supports a conclusion that the Second Circuit recognizes no unequivocal right for a criminal defendant to be accompanied by defense counsel at a psychiatric evaluation, none of these cases indicate that it is necessarily inappropriate for defense counsel to be permitted to attend if

authorized by the trial court. Furthermore, there are a number of decisions that indicate the presence of counsel at psychiatric evaluations is up to the wide discretion of the trial judge in federal civil courts. In <u>Vreeland v. Ethan Allen, Inc</u>., 151 F.R.D. 551 (SDNY, 1993), the U.S. District Court for the Southern District of New York held that a Magistrate Judge did not abuse his discretion by authorizing the presence of the defense attorney during the psychiatric evaluation of plaintiffs in an Age Discrimination in Employment Act suit, writing that even if an attorney has no right to be present, a judicial officer in his or her discretion may allow it in the interests of justice. <u>Id</u>. In another Southern District of New York civil case, the court indicated that there are opportunities for third party presence at psychiatric evaluations if "special circumstances have been demonstrated." <u>Baba-Ali v. City of New York</u>, 1995 U.S. Dist. LEXIS 18883.

Furthermore, courts in other jurisdictions have explicitly held that the presence of defense counsel during psychiatric evaluations of criminal defendants is a matter up to the broad discretion of the trial judge, See, <u>People v. Martin</u>, 386 Mich. 407, <u>State v. Whitlow</u>, 45 N.J. 3). Lastly, New York Court of Appeals has held that a pre-trial psychiatric evaluation is a "critical stage" of the prosecution under a <u>Wade</u> analysis, and stated that the defendant is entitled to have counsel present, chiefly to make effective the right to cross-examination the expert. <u>Lee v. County Court of Erie County</u>, 27 N.Y. 2d 432, 459 (NY Court of Appeals, 1984). This reasoning was mirrored by Judge Bazelon's dissent in <u>United States v. Byers</u>, 740 F.2d 1104, 1168 (D.C Cir. 1984), where he stated that there is a massive risk of distortion and severe difficulty with factual reconstruction when defense attorneys cannot observe psychiatric interviews and effectively question experts regarding the specific observations that form the basis of their conclusions. <u>Id</u> at 1168. Judge Bazelon concluded that denial of the presence of defense counsel at a government expert's psychiatric evaluation, which he reasons is a "critical stage" under <u>Wade</u>, constitutes a deprivation of the right to the assistance of counsel. <u>Id</u> at 1171.

Justin's case can be easily distinguished from the aforementioned cases on numerous critical grounds. Both <u>Baird</u> and <u>Trapnell</u> concern an affirmative defense of insanity plea during the trial phase of a criminal proceeding, whereas Justin has already pleaded guilty and is now awaiting his sentencing and is offering 'diminished capacity' as mitigation at sentencing, not as a defense at trial. While <u>Wilson</u> concerns the sentencing phase of a criminal proceeding, the defendant there was facing the death penalty. The

determination of whether the defendant was mentally retarded was first necessary in order to proceed forward with the death penalty phase of the trial. <u>Wilson</u> widely differs from Justin's situation because <u>Wilson</u> did not involve proof in the form of recorded conversations with undercover government agents over a period of two and half years starting when the defendant was of the tender age of sixteen. Also, the issue of mental capacity in <u>Wilson</u> was a jury determination at the penalty phase of a capital case.

The presence of counsel during a psychiatric hearing is a discretionary determination by a trial court. Justin is an excellent candidate for a favorable use of this discretion. Unlike the defendant in <u>Trapnell</u>, who feigned insanity, Justin has an extensive, well documented history of mental illness and physical frailty. Furthermore, since Justin suffers from a communicative disorder and has a history of having difficulty expressing and articulating himself, it may be particularly difficult for defense counsel to determine from a post-evaluation interview, any flaws in the methodology used in the expert's ejaculation of him, thus providing a strong justification for allowing the presence of a defense representative during the evaluation.

<u>Conclusion</u>

Second Circuit case law is silent as to whether a criminal defendant may be accompanied by a defense representative during a government psychiatric evaluation of the defendant who claims 'diminished capacity' as mitigation at a sentencing hearing. However, given the unique and compelling circumstances presented herein, this determination rests in the sound discretion of this court. Due to the defendant's long history of cognitive and emotional abnormalities and his young age at the time he was first surveilled, this court should allow a defense representative to be present at his mental evaluation to be performed by the government's expert.

It is respectfully requested that the court grant defendant's application. Thank you for your careful consideration.

Respectfully submitted,

ANTHONY M. LA PINTA

cc: Michael Canty, Esq.