

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JJD/SDD/MPC
F. #2012R00095

*610 Federal Plaza*
*Central Islip, New York 11722*

July 28, 2015

<u>By Hand and ECF</u>

The Honorable Denis R. Hurley
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

        Re:    United States v. Justin Kaliebe
                 <u>Criminal Docket No. 13-072 (DRH)</u>

Dear Judge Hurley:

        On February 8, 2013, the defendant Justin Kaliebe, also known as "Umar Abdur-Rahman," "Justin Russi" and "Omar," pled guilty to an Information charging two counts: (1) attempting to provide material support to terrorists in furtherance of a conspiracy to commit murder in a foreign country, in violation of 18 U.S.C. § 2339A(a); and (2) attempting to provide material support to a foreign terrorist organization, al-Qaeda in the Arabian Peninsula ("AQAP"), also known as Ansar al-Sharia ("AAS")[1], in violation of 18 U.S.C. § 2339B(a)(1).  The defendant's total offense level is 37, which provides for an advisory Guidelines range of 360 months to life imprisonment within Criminal History Category VI.  Because the counts of conviction have a combined statutory maximum of 30 years, the defendant's effective Guidelines range is 360 months.  (Pre-Sentence Investigation Report ("PSR") at ¶ 91).

        In his sentencing submission dated April 14, 2014, the defendant requested a drastic sentencing reduction based almost entirely on his history and characteristics, pursuant to § 3553(a)(1), to the exclusion of all of the other factors that Congress has instructed sentencing courts to consider, including the serious nature of this offense and the need for the sentence to protect the public and deter terrorism offenses.  While the defendant's sentencing memorandum characterizes his request for a 36-month sentence as a downward departure motion, it is essentially a request for a below-Guidelines sentence based on the following

---

[1] AQAP and AAS are collectively referred to herein as "AQAP."

grounds: (1) the defendant's diminished capacity, resulting from the defendant's alleged mental, emotional and physical condition (Def. Mem. at 7-17); and (2) the defendant's aborted cooperation with the government (id. at 15).

Whether considered as a request for a downward departure or a non-Guidelines sentence, the defendant's history and characteristics plainly do not warrant a sentence of 36 months. While the Court must consider the defendant's characteristics, including his age, upbringing, mental and physical health, and incomplete cooperation, these factors are outweighed by the seriousness of his conduct, and the need for the sentence to fulfill the objectives of § 3553(a)(2)(A)-(C), and do not warrant anything remotely approaching the 36-month sentence requested by the defendant.

In support of this position the defendant has submitted both a report and a letter from medical practitioners outlining the defendant's mental, emotional and physical condition. The government has reviewed these reports and argued in its previous sentencing submission the reasons why the conclusions of these practitioners should be rejected. (See Docket Entry 97). Nevertheless, the defendant has asked the court to consider these reports and the findings therein as mitigating factors when fashioning a sentence. As a result of these disputed sentencing issues the defendant has requested a Fatico hearing.

In anticipation of the hearing the government retained the services of Dr. N.G. Berrill. Dr. Berrill is a licensed psychologist who has previously testified as an expert. Dr. Berrill intends to conduct a forensic interview and conduct a psychological examination. Dr. Berrill will then prepare a report of the results of the examination. This report will be provided to defense counsel, who will have the opportunity to cross examine Dr. Berrill at the Fatico hearing. [2]

In a letter motion dated June 25, 2015, the defendant requested that defense counsel be permitted to be present at the examination. According to Dr. Berrill, however, the presence of a third party, (namely defense counsel), would to have a deleterious effect on the examination he intends to conduct because, even when a third party agrees to remain silent and simply observe the proceedings, facial expressions and/or body language of the third party can taint the examination. Moreover, because defense counsel will be given the opportunity to cross examine Dr. Berrill, his presence at the examination could render him a witness, and thus potentially preclude him from conducting the cross examination. Accordingly, the government respectfully submits that the request of the defendant is inconsistent with the best practices of the medical community and is unsupported in the law, and therefore should be denied.

---

[2] No one from the United States Attorney's Office or the Federal Bureau of Investigation will be present during the examination conducted by Dr. Berrill. Additionally, Dr. Bardey conducted his examination of the defendant without counsel for the government or the defendant present.

2

## Applicable Law

There is a general prohibition against allowing third parties to be present during a psychiatric examination. See e.g., Steinsnyder v. U.S., 2012 WL 694724, at *1 (E.D.N.Y. March 1, 2012); Tirado v. Erosa, 158 F.R.D. 294, 295 (S.D.N.Y. 1994). The Second Circuit has consistently held that a psychiatric examination is not a "critical stage" in proceedings at which assistance of counsel is needed or at which counsel might make a useful contribution. See, e.g., United States v. Trapnell, 495 F.2d 22, 24-25 (2d Cir. 1974) (rejecting the defendant's request to have counsel present during an examination with the government's psychiatrist); United States v. Baird, 313 F.2d 700, (2d Cir. 1969) (holding there is no right to counsel at a psychiatric examination). Similarly, the Eastern District of New York has rejected the argument that the Sixth Amendment requires that upon request, defense counsel be permitted to be present at a government expert's examination of a defendant. E.g., U.S. ex rel. Edney v. Smith, 425 F. Supp. 1038, 1054 (E.D.N.Y. 1976) ("[S]uch an interview is not a 'critical stage' . . . at which the presence of counsel is required, since its principal purpose is to enable the expert to gather data from which to form the basis of an opinion.").

Courts in this Circuit have repeatedly found that the presence of counsel would be deleterious during such examinations, "which [rely] upon unimpeded one-on-one communication between doctor and patient." Di Bari v. Incalca Cla Armadora, S.A., 126 F.R.D. 12, 13 (E.D.N.Y. 1989). "[T]he presence of a third party, such as counsel or a stenographer, at such an examination tends to destroy the effectiveness of the interview." Baird, 313 F.2d at 711. The Second Circuit has also explained why the presence of counsel at an examination can be detrimental to the issue at hand. Specifically, the court stated,

> It is difficult to imagine anything more stultifying to a psychiatrist, as dependent as he is upon the cooperation of his patient, than the presence of a lawyer objecting to the psychiatrist's questions and advising his client not to answer this question and that.

Hollis v. Smith, 571 F.2d 685, 692 (2d Cir. 1978).

Similarly, in United States v. Wilson, 920 F. Supp. 2d 287 (E.D.N.Y. 2012), the court held that the Sixth Amendment does not require that a defendant's request to have counsel present at a psychiatric examination be granted. The court noted that the Second Circuit and district courts in this Circuit have "repeatedly denied requests by counsel to be present at mental examinations" because "the presence of third parties during examinations can be disruptive and have adverse effects on the performance and outcome of the evaluation." Id. at 305. In Wilson, the court rejected defense counsel's argument that any interference would be alleviated if counsel sat out of the defendant's sight during the examination and remained silent except when making objections. Id. The court also rejected the defendant's alternative request that counsel be allowed to videotape or monitor the psychiatric examination. Id. at 306 ("[W]hile recording is less intrusive than permitting a

third-party to be present, it would still impede one-on-one communication . . . and tend to undermine the [examiner's] evaluator technique.") (citation omitted).

On the rare occasion that a third party has been permitted to attend a psychiatric examination, courts have only done so under "special circumstances" and have generally permitted stenographers or tape recorders to be present, not counsel. See Baba-Ali v. City of New York, 1995 WL 753904, at *2 (S.D.N.Y. December 19, 1995) ("The weight of authority is clearly against the presence of counsel at an examination, while stenographers or tape recorders have been permitted in some cases where special circumstances have been demonstrated."). But see Tirado, 158 F.R.D at 295-96 (rejecting arguments that presence of counsel and a stenographer during an examination was "essential" due to the sensitive nature of the subject matter at issue and in order to reduce the risk of any impropriety during the examination).

## **Analysis**

Based on the applicable principles set forth above, this court should deny the defendant's request for defense counsel to be present during the examination. The defendant's request is unsupported in the law, and as noted above, would impair the ability of Dr. Berrill to conduct a thorough and accurate examination. Counsel, if permitted to be present, could instruct the defendant to refuse to answer questions or interrupt the examination, undermining the very purpose of the examination – to obtain an accurate understanding of the defendant's emotional and mental condition. The defendant has pled guilty and now raises serious issues concerning his mental condition. The government has the right to have its own expert conduct an examination to obtain an accurate report of the defendant's mental, emotional and physical condition. The presence of counsel would frustrate this important objective.

Further, the defendant argues that his circumstances provide a justification for permitting defense counsel to attend the examination. However, as noted above, even when "special circumstances" exist, courts have not permitted counsel to be present. Additionally, the "special circumstances" the defendant cites to, namely that he was radicalized prior to turning 18 years of age, appear to be misplaced. The defendant was charged as an adult, pled guilty as an adult and will be sentenced as an adult. As such, no "special circumstances" exist. Moreover, the defendant cites to no controlling case law in support his position. In fact the weight of Second Circuit case law and the law of this court weigh heavily against the defendant's request.

Accordingly, the government respectfully submits that the defendant's application for counsel to be present during the government's examination of the defendant be denied.

Respectfully submitted,

KELLY T. CURRIE
Acting United States Attorney

By: _____
John J. Durham: (631) 715-7851
Seth D. DuCharme: (718) 254-6021
Michael P. Canty: (718) 254-6490
Assistant U.S. Attorneys

cc: Anthony La Pinta, Esq. (By email)
USPO Steven Guttman (By email)